### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DANUTA C. GARBINSKI et al.,

                Plaintiffs,              No. 11-cv-11503
                                        Hon. Gerald E. Rosen

vs.

GENERAL MOTORS LLC,

                Defendant.
_____/

### OPINION AND ORDER REGARDING THE PARTIES'
### MOTIONS FOR SUMMARY JUDGMENT

### I. INTRODUCTION

Plaintiffs Danuta Garbinski and Jerrie Rynicki ("Plaintiffs") filed similar putative class actions against their former employer, Defendant General Motors LLC ("GM" or "Defendant"), in response to a decision made by GM to reduce their weekly workers' compensation benefits. The two cases were consolidated by order of this Court [Dkt. #12]. Plaintiffs claim that the decision to reduce workers' compensation benefits based on the availability of other benefits violated both the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Michigan law, Mich. Comp. Laws §§ 418.354(11), (14). Both parties moved for summary judgment. Having reviewed the parties' briefs and the record, the Court finds that the pertinent allegations and legal arguments are sufficiently addressed in these materials and that oral argument would not assist in the

resolution of this motion.  Accordingly, the Court will decide Defendant's motion "on the briefs."  *See* L.R. 7.1(f)(2).  The Court's opinion and order is set forth below.

## II. FACTUAL BACKGROUND

Plaintiffs are both former GM employees who retired after becoming totally and permanently disabled as a result of work-related injuries.  Garbinski was injured on March 30, 2004 and retired as a permanently disabled pensioner on April 1, 2005.  Rynicki was injured on January 8, 2003 and retired as a permanently disabled pensioner on February 1, 2004.  At all relevant times, Plaintiffs were represented by their union, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"), which undertook the negotiation of a series of collective bargaining agreements ("CBA" or "CBAs") with Defendant.  Upon retiring, Plaintiffs began receiving payments for workers' compensation, social security disability insurance, and disability retirement insurance pursuant to the CBA between the UAW and GM.

Because workers' compensation and disability retirement insurance are both employer-funded benefits aimed at accomplishing the same goal -- compensating for a disabled employee's lost earning potential -- the Michigan legislature enacted a statute allowing employers to "coordinate" workers' compensation and disability retirement benefits.  The statute essentially allows employers to reduce the amount of an individual's workers' compensation benefits in light of disability retirement benefits also being received by the same person.  The legislature enacted this provision because it

found that employers were paying more than once to replace a single employee's lost earning capacity.  However, employers are not required to coordinate benefits.

The 2003 CBA between GM and the UAW did not initially include language regarding the coordination of benefits.  That year, however, GM and the UAW agreed to an amendment to the 2003 CBA ("the 2003 letter") stating that GM was electing against the coordination of benefits described above, for the time being.  The appended paragraph reads as follows: "Pursuant to Subsection 354(14) of the Michigan Workers Compensation Act, as amended, until termination or earlier amendment of the 2003 Collective Bargaining Agreement, workers compensation for employees shall not be reduced by disability retirement benefits payable under the Hourly-Rate Employees Pension Plan."

In 2007, GM and the UAW agreed to a new, supplemental CBA ("the 2007 CBA").  As they did in 2003, GM and the UAW subsequently amended the 2007 CBA to include language regarding the coordination of workers' compensation and disability retirement benefits ("the 2007 letter").  Unlike the prior amendment, however, the 2007 letter stated that disability benefits would be coordinated (*i.e.*, reduced), but only for "employees who are injured and retire on or after October 1, 2007[.]"[1]  The appended

---

[1] The paragraph reads in full: "Pursuant to Subsection 354(14) of the Michigan Workers Compensation Act, as amended, until termination or earlier amendment of the 2007 Collective Bargaining Agreement for employees who are injured and retire on or after October 1, 2007, workers compensation payments for such employees shall be reduced by disability retirement benefits payable under the Hourly-Rate Employees Pension Plan to the extent that the combined workers compensation payments, initial Social Security Disability Insurance Benefit amount, and the initial disability retirement benefit (per

3

paragraph otherwise contained much of the same language as the 2003 CBA amendment, including the caveat that the amendment would last "until termination or earlier amendment of the 2007 Collective Bargaining Agreement . . . ."

Then, in 2009, GM and the UAW agreed to amend the terms of the 2007 letter again in light of GM's precarious finances ("the 2009 letter"). As amended by the 2009 letter, the 2007 CBA stated that, effective January 1, 2010, all retirees' benefits would be coordinated pursuant to Mich. Comp. Laws § 418.354(14).[2] On January 1, 2010, Plaintiffs' benefits were reduced accordingly. This lawsuit was filed to contest the change. Plaintiffs challenge the coordination of benefits under provisions of both the Labor Management Relations Act ("LMRA") and Michigan law.

## III. ANALYSIS

### A.      Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial

---

week) exceed the employee's gross Average Weekly Wage at the time of injury. In no event shall such reduction be greater than the disability retirement benefit payable."

[2] The amended language provides as follows: "As a result of the 2009 negotiations, the parties have agreed that the 2007 letter agreement, referenced above, will be amended such that, effective January 1, 2010, the provisions of the 2007 letter agreement will be applied to all retirees who retired prior to January 1, 2010, regardless of their date of retirement or injury. Additionally, the parties have agreed that, for employees who retire on or after January 1, 2010, the above referenced 2007 letter titled Workers Compensation will be eliminated and that, pursuant to the Michigan Workers Compensation Act, workers compensation payable for all such retirees shall be reduced, commencing January 1, 2010, by pension or retirement payments payable under the Hourly-Rate Employees Pension Plan."

responsibility of informing the [Court] of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotation marks and citations omitted).

In deciding a motion brought under Rule 56, the Court views the evidence in the light most favorable to the nonmoving party. *Pack v. Damon Corp.*, 434 F.3d 810, 813 (6th Cir. 2006). Yet, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1)(A)-(B). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion[.]" Fed. R. Civ. P. 56(e)(2). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**B.    Summary Judgment is Appropriate on Plaintiffs' LMRA Claim**

The LMRA gives federal courts jurisdiction over breach of contract claims involving collective bargaining agreements. 29 U.S.C. § 185(a). Such is the nature of Plaintiffs' suit: they allege that Defendant's decision to coordinate the workers' compensation benefits of already-retired individuals was a violation of the CBA, but their argument takes multiple forms. First, Plaintiffs argue that their benefits had vested such that they could not be unilaterally reduced. Second, Plaintiffs assert that the modification

5

itself was not permitted by the CBA's amendment provision.  Finally, Plaintiffs characterize the amendment as retroactive and thus impermissible under a separate section of the CBA.[3]  The Court will address each contention in turn.

As explained below, the Court holds that summary judgment in Defendant's favor is appropriate.  There are no disputes of material fact, and Defendant is entitled to judgment as a matter of law: Plaintiffs' benefits were not vested, Defendant complied with the terms of the CBA when it amended its benefit coordination policy, and the amendment is not properly characterized as retroactive.  Fed. R. Civ. P. 56(a).

1.    Plaintiffs' benefits did not vest.

A claim arising under the LMRA is "essentially a breach of contract allegation[,]" *Schreiber v. Philips Display Components Co.*, 580 F.3d 355, 363 (6th Cir. 2009); and, as with contracts more generally, benefits arising out of a CBA can vest.  That is, they can become fixed for the beneficiary's future enjoyment.  Black's Law Dictionary 1699 (9th ed. 2009); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) ("having vested, the benefits could not be altered without the plaintiffs' consent.").  Vested benefits in a CBA cannot be unilaterally modified without running afoul of the LMRA. *Sprague*, 113 F.3d at 399.

Under traditional rules of contract interpretation, whether retiree benefits have vested depends on the intent of the parties.  *Price v. Bd. of Trustees of Indiana Laborer's*

---

[3] Plaintiffs also cursorily argue that Defendant has not proven that the 2009 letter was approved by Defendant's board of directors, since the CBA requires approval of amendments.  Aside from the implausibility of this claim, Plaintiffs have failed to cite any materials on point; the bare assertion that a factual dispute exists is insufficient. *See* Fed. R. Civ. P. 56(c)(1).

*Pension Fund*, 632 F.3d 288, 292 (6th Cir. 2011); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Yard-Man*, 716 F.2d 1476, 1479 (6th Cir. 1983). "Clearly the parties to a collective bargaining agreement may provide for rights which will survive termination of their collective bargaining relationship." *Yard-Man*, 716 F.2d at 1479 (citing *John Wiley & Sons v. Livingston*, 376 U.S. 543, 555 (1964)). Although, such a benefit "must necessarily find its genesis in the collective bargaining agreement." *Id.*

In the Sixth Circuit, "basic rules of contract interpretation apply, meaning that the courts must first examine the CBA language to see if clear manifestations of an intent to vest are present." *Cole v. ArvinMeritor, Inc.*, 549 F.3d 1064, 1069 (6th Cir. 2008) (citing *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Yard-Man*, 716 F.2d 1476, 1479 (6th Cir. 1983)). An intent to vest can be found in explicit language to that effect or, in the alternative, "if the context and other available evidence indicate an intent to vest." *Id.* (quoting *Noe v. PolyOne Corp.*, 520 F.3d 548, 552 (6th Cir. 2008)). "The [C]ourt should . . . interpret each provision in question as part of the integrated whole. If possible, each provision should be construed consistently with the entire document and the relative positions and purposes of the parties." *Yard-Man*, 716 F.2d at 1479-80 (6th Cir. 1983) (citations omitted). Further, "the collective bargaining agreement's terms must be construed so as to render none nugatory and avoid illusory promises." *Id.* at 1480 (citation omitted).

Plaintiffs here are claiming that their vested right was a right against coordinated benefits. Plaintiffs argue that the relevant documents created a vested right to workers'

compensation benefits that are not coordinated against other benefits.  The determination of whether specific contract rights were intended to vest is not amenable to a single, formulaic approach.  Rather, each case depends on the conduct of the parties and the unique text of the CBA at issue.  For instance, in *Yard-Man*, the Sixth Circuit held that retiree insurance benefits in a CBA had vested because, *inter alia*, the language providing the benefits lacked any durational language limiting the scope of benefits, whereas other provisions of the CBA included specific durational language or relied on restrictions typically inapplicable to retirees.  716 F.2d at 1480-81.  Likewise, in *Cole*, the court held that benefits had vested because the language of the plan -- benefits "shall continue" -- evinced an intent that the benefits were to continue indefinitely and the CBA's general durational language -- contained in a separate section of the CBA -- was insufficient to trump the specific promise of lifetime benefits.  549 F.3d at 1070-71.

On the other hand, in *Sprague*, the court determined that retiree benefits did not vest because, while the plan documents stated that retirees were entitled to health coverage at no cost for their lifetimes, the same language included an explicit reservation of the right to terminate or amend the plan.  133 F.3d at 401 ("We see no ambiguity in a summary plan description that tells participants both that the terms of the current plan entitle them to health insurance at no cost throughout retirement and that the terms of the current plan are subject to change.").  Further, in *Int'l Union, United Auto., Aerospace and Agric. Implement Workers of Am. v. Cleveland Gear Corp.*, C83-947, 1983 WL 2174 (N.D. Ohio Oct. 20, 1983), the Court rejected a claim of vested rights because the clause providing the rights at issue -- benefits "shall be effective as provided therein and shall

8

remain in full force and effect during the term of this collective bargaining agreement" --
explicitly limited the benefits to the expiration of the CBA, thereby negating an intent to
vest.  1983 WL 2174, at *2.

In support of their claim that the right against coordinated benefits was a vested
right, Plaintiffs point to two pieces of text.  First, Plaintiffs emphasize the use of the word
"shall" in the 2003 letter, where it states "workers compensation for employees shall not
be reduced by disability retirement benefits . . . ."  This argument is unavailing, however,
because it disregards explicit limiting language contained within the same sentence.  The
text Plaintiffs rely on is clearly and unequivocally prefaced by language limiting the
duration of Defendant's promise "until termination or earlier amendment of the 2003
Collective Bargaining Agreement[.]"

Read in full, the 2003 letter clearly limits the duration of Defendant's promise
regarding non-coordinated benefits: "until termination or earlier amendment of the 2003
Collective Bargaining Agreement, workers compensation for employees shall not be
reduced by disability retirement benefits payable under the Hourly-Rate Employees
Pension Plan."  The limiting language expressly repudiates an intent that the right should
vest, and the language itself was included in the same sentence regarding coordinated
benefits.  No reasonable reading of the 2003 letter can provide otherwise; and the same
durational language was included in the 2007 and 2009 letters, as well.  Accordingly,
Plaintiffs' benefit did not vest by operation of the letters amending the CBAs because the
plain language used cannot be reconciled with an intent to vest.  *See Sprague*, 133 F.3d at
401.

9

The other provision relied upon by Plaintiffs in support of their argument is in Article I of the CBA.  It reads as follows:

> Except as expressly provided in Sections 6, 7, and 8 of Article II and as provided in Article VII and Article IX, the provisions set forth in this Plan are applicable only to employees with seniority on or after October 1, 2007. Employees retired with benefits commencing prior to such date or separated prior to such date, or eligible surviving spouses of such employees, shall be entitled to the benefits, if any, under the Plan as it existed immediately prior to such date.

Plaintiffs specifically emphasize the last sentence of the paragraph, which states that employees retired prior to October 1, 2007 "shall be entitled to the benefits, if any, under the Plan as it existed immediately prior to such date."  Under this theory, Plaintiffs assert that the 2003 CBA elected against coordinated benefits and that this provision requires Defendant to continue the practice.  However, Plaintiffs' position again depends on a selective reading of CBA text.  Read in isolation, the text relied upon by Plaintiffs would seem to support their position.  That single sentence is not determinative, however, and relying on it in isolation would violate the Court's obligation to "interpret each provision in question as part of the integrated whole . . . ."  *Yard-Man*, 716 F.2d 1476, 1479-80 (6th Cir. 1983).

In addition to making claims regarding retiree benefits, the above-quoted paragraph clearly caveats that it is limited by the text of a number of other CBA provisions: "[e]xcept as provided in Sections 6, 7, and 8 or Article II and as provided in Article VII and Article IX . . . ."  For present purposes, the most important of these provisions is Article IX of the CBA, entitled "Amendment and Termination".  In section

10

one of Article IX, Defendant unambiguously reserves the right to "amend, modify, suspend or terminate the Plan by action of its Board of Directors[.]"  The circumstances for amending the CBA are discussed in detail at Part B.2, *infra*.  Nevertheless, for present purposes it suffices to say that Defendant expressly reserved the right to modify the CBA, which necessarily includes "the benefits" referenced in Article I.  It thus cannot be said that the parties intended to vest the broad rights referred to in Article I.  More importantly, the 2003 letter -- itself integrated within the 2003 CBA -- expressly reserved Defendant's right to amend the benefit coordination policy in particular, further underscoring the Court's conclusion.

The situation presented here -- enumerating broad rights concomitantly with a reservation of the right to amend -- closely resembles *Sprague*, another case in which retirees claimed that GM had impinged on vested rights under a CBA.  133 F.3d at 392-93.  Specifically, the court in *Sprague* found that rights had not vested, despite language to that effect, because the same provision granting benefits also clearly reserved the right to modify retiree benefits.  *Id.* at 401.  Despite stating that benefits would be available "at no cost" and "for [their] lifetime[s]", the court determined that the retirees' benefits had not vested because the CBA explicitly reserved the right to amend and terminate benefits: "We see no ambiguity in a summary plan description that tells participants both that the terms of the current plan entitle them to health insurance at no cost throughout retirement and that the terms of the current plan are subject to change."  *Id.*

The same is true here.  While Defendant made statements regarding retiree benefits in Article I of the CBA and in the 2003 letter, both provisions contain caveats

11

reserving Defendant's right to modify or amend the plan. Article I of the CBA -- which discusses retiree benefits more broadly -- incorporates Defendant's right to amend the plan generally; and the 2003 letter expressly reserves the specific right to amend the benefit coordination policy. Therefore, the express text of the agreement does not evince an intent to vest Plaintiffs' retirement benefits against coordination. *Id.* Consequently, Defendant is entitled to judgment as a matter of law, and as there is no dispute of material fact, summary judgment is appropriate. Fed. R. Civ. P. 56(a).

### 2.    Defendant properly amended the CBA

In addition to claiming that their benefits had vested, Plaintiffs contend that Defendant's amendment to the CBA did not comply with the CBA provision governing amendments. According to Plaintiffs, Article IX, Section 1 of the CBA -- the section governing amendments -- forbids changes that alter the CBA or its operation unless necessary for specific tax purposes. Since coordinating benefits ostensibly alters the operation of the CBA for non-tax purposes, Plaintiffs claim the amendment violates the CBA's express terms. Article IX, Section 1 of the CBA provides in full:

> The Corporation reserves the right to amend, modify, suspend or terminate the Plan by action of its Board of Directors, provided, however, that no such action shall alter the Plan or its operation, except as may be required by the Internal Revenue Service for the purpose of meeting the conditions for qualification and tax deduction under Sections 401, 404, and 501(a) of the Internal Revenue Code, in respect of employees who are represented under a collective bargaining agreement in contravention of the provisions of any such agreement pertaining to pension benefits and supplements as long as any such agreement is in effect.

As with Plaintiffs' other contentions, however, this claim also depends on a selective reading of the CBA's text.  Plaintiffs ask the Court to look exclusively at the provision stating that no amendment or modification "shall alter the Plan or its operation, except as may be required by the Internal Revenue Service . . . ."  Under Plaintiffs' reading, since the coordination of benefits was not required to meet IRS tax deduction rules, the amendment was improper and thus invalid.  While the above provision is far from a model of clarity,[4] a closer parsing of the text shows that Defendant's right to amend the CBA is considerably broader than Plaintiffs acknowledge and includes the amendments contained in the 2003, 2007, and 2009 letters.

Defendant's right to amend becomes clearer by examining the amendment provision clause-by-clause.  A careful reading of the amendment text demonstrates that the first clause -- "The Corporation reserves the right to amend, modify, suspend or terminate the Plan by action of its Board of Directors" -- broadly reserves the right to amend or terminate the CBA.  The text immediately following the reservation -- "provided, however, that no such action shall alter the Plan or its operation" -- constitutes the beginning of an exception to Defendant's amendment power.  That same exception clause concludes after the language regarding tax eligibility: "in respect of employees who are represented under a collective bargaining agreement in contravention of the provisions of any such agreement pertaining to pension benefits and supplements as long as any such agreement is in effect."  The text thus provides that no amendment or

---

[4] What makes the CBA's amendment provision so unwieldy is its imprudent overuse of commas to set off clauses, carve out exceptions, and enumerate serial lists.

modification to the CBA shall alter the plan with regard to current employees represented under the CBA.  This comports with federal labor policy and common sense since unilateral amendments to a CBA governing active employees would completely undermine the purpose of the collective bargaining process.

The language regarding tax eligibility -- "except as may be required by the Internal Revenue Service for the purpose of meeting the conditions for qualification and tax deduction under Sections 401, 404, and 501(a) of the Internal Revenue Code" -- merely provides an exception to the first exception discussed immediately above. Namely, Defendant may not unilaterally amend the CBA governing active employees, unless the amendment is necessary for specific tax purposes not applicable to this case. Interpreting the amendment provision as Plaintiffs propose would amount to a preternaturally narrow right to amend, and it would render almost half of Article IX(1) completely nugatory.  The rules of contract interpretation require the Court to avoid any such outcome.  *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Yard-Man*, 716 F.2d 1476, 1480 (6th Cir. 1983) ("the collective bargaining agreement's terms must be construed so as to render none nugatory") (citations omitted). Since Plaintiffs are retired employees, the broad exception to the power to amend does not apply.  Therefore, the amendments proffered in the 2003, 2007, and 2009 letters constituted valid amendments under Defendant's reserved power.  There being no dispute of material fact, Defendant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

3.     The CBA amendment was not a retroactive amendment.

Plaintiffs' third argument contends that the decision to coordinate retiree benefits constituted a retroactive amendment in violation of the CBA.  The provision relied upon by Plaintiffs states that retroactive amendments to the CBA are only permissible "to qualify or maintain the Plan as a plan and trust meeting the requirements of . . . the Internal Revenue Code . . . or . . . any other applicable provisions of the federal tax laws[.]"  Since the decision to coordinate benefits was not made to ensure eligibility for tax deductions, the amendment was improper if it was retroactive.  Plaintiffs rely on the 1990 edition of Black's Law Dictionary to define retroactive as "the process of acting with reference to past occurrences" and thus argue that the decision to coordinate benefits was retroactive because "it is an action with reference to the past occurrence of awarding benefits to an employee upon retirement."  (Pls.' Resp. to Mot. for Summ. J. 12) (quotation omitted.)

Plaintiffs' argument lacks merit because, in this context, the "past occurrences" to which a retroactive amendment would apply are actual payments of benefits made to retirees, not the vague notion of "awarding benefits to an employee upon retirement." Plaintiffs' interpretation leads to awkward results.  First, retirees are not awarded benefits upon retirement; they become eligible for benefits that are subsequently paid out under the terms of the controlling CBA.  Benefits are considered "awarded" whenever they are paid out.  Second, if retroactive carries the meaning Plaintiffs ascribe, then Defendant would be summarily barred from altering retiree benefits, since any amendment would affect past eligibility and thus would be retroactive.  Such a conclusion would render a

15

number of current CBA provisions meaningless, since comparing iterations of the CBA

shows that each subsequent CBA implements a variety of incremental changes to retiree

benefits.[5]  *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*

*v. Yard-Man*, 716 F.2d 1476, 1480 (6th Cir. 1983) ("the collective bargaining

agreement's terms must be construed so as to render none nugatory") (citations omitted).

Defendant's decision to amend its benefit coordination policy from a future date

onward is more appropriately characterized as a prospective amendment.  The most

recent edition of Black's Law Dictionary provides considerable clarity regarding the

meaning of retroactive and underscores the insufficiency of Plaintiffs' position.  The

2009 edition defines retroactive as "extending in scope or effect to matters that have

occurred in the past."  Black's Law Dictionary 1432 (9th ed. 2009).  "Matters" does not

refer to retirees' eligibility for benefits, but rather to specific payments that have occurred

in the past.  After all, retirees' eligibility for benefits are not irrevocably fixed at

retirement.  Instead, "matters" more reasonably refers to actual benefit payments made to

retirees.  As such, an amendment would be retroactive if its effective date required

retirees to repay the difference between benefits previously received and benefits

available under a newly-revised policy.  Defendant has not sought to recalculate or

recover past benefits under the new coordination policy.  Rather, Defendant amended its

---

[5] For example, Article II(8)(b) of the CBA contains a table listing retirees' temporary
monthly benefits.  The amounts differ based on when a retiree's benefits became payable.
These amounts were increased between the 2003 and 2007 CBAs.  Since it does not
appear that these amounts were adjusted for tax deduction purposes, Plaintiffs' argument
would render these amendments invalid since they affect retirees who retired under
earlier iterations of the CBA.

coordination policy prospectively; the CBA amendments only affected future payments to retirees.  For this reason, Defendant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

## C.      Plaintiffs' State Law Claims

Plaintiffs' complaint proffers two claims arising under Michigan law.  Plaintiffs allege that the coordination of workers' compensation benefits violates § 418.354(14), and that the language used in the 2009 letter improperly "considers" Plaintiffs' social security disability benefits in violation of § 418.354(11).  In addition to seeking summary judgment generally, Defendant has responded that Plaintiffs' first state law claim, under § 418.354(14), is preempted by the LMRA.  As explained below, the Court finds that Plaintiffs' § 418.354(14) claim is indeed preempted and that summary judgment is appropriate on the claim arising under § 418.354(11).

### 1.      Plaintiffs' claim under § 418.354(14) is preempted by the LMRA.

Plaintiffs argue that Defendant is violating § 418.354(14) by improperly coordinating their workers' compensation benefits with disability insurance benefits. Defendant asserts that this claim is preempted by the LMRA.  Because Plaintiffs cannot show that their right to non-coordination of benefits both arises from state law and does not require interpretation of the CBA, their § 418.354(14) claim is preempted by the LMRA.  *See Alongi v. Ford Motor Co.*, 386 F.3d 716, 724 (6th Cir. 2004) (stating that "[i]f the right both arises from state law and does not require contract interpretation, then there is no preemption.  However, if neither or only one criterion is satisfied, . . . preemption is warranted.").

17

In preemption cases, "[t]he purpose of Congress is the ultimate touchstone."

*Retail Clerks Intern. Ass'n v. Schermerhorn*, 375 U.S. 96, 103 (1963). "Preemption

analysis involves the consideration of whether the state law stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress."

*Espinosa v. Norfolk & W. Ry. Co.*, 750 F. Supp. 819, 825 (E.D. Mich. 1990), *aff'd*, 946

F.2d 894 (6th Cir. 1991) (citing *Aronson v. Quick Point Pencil Co.,* 440 U.S. 257

(1979)). Section 301 of the LMRA allows lawsuits for violations of contracts between

employers and labor organizations to be brought in the district courts of the United

States. 29 U.S.C. § 185(a). The Supreme Court has since made it clear that state law

claims arising from the breach of a collective bargaining agreement are generally

preempted by the LMRA. *See, e.g.*, *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S.

399, 405-06 (1988) (noting the importance of uniform labor law nationally); *Caterpillar*

*Inc. v. Williams*, 482 U.S. 386, 394 (1987) ("[s]tate law does not exist as an independent

source of private rights to enforce collective bargaining contracts") (quotation omitted);

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985) ("a suit in state court alleging a

violation of a provision of a labor contract must be brought under § 301 and be resolved

by reference to federal law").

Following this edict, the Sixth Circuit has developed a two-prong test for

determining whether a state law claim is preempted by § 301 of the LMRA:

> First, we examine whether proof of the state law claim
> requires interpretation of collective bargaining agreement
> terms. Second, we ascertain whether the right claimed by the
> plaintiff is created by the collective bargaining agreement or
> by state law. If the right both arises from state law and does

> not require contract interpretation, then there is no
> preemption.  However, if neither or only one criterion is
> satisfied, § 301 preemption is warranted.

*Alongi v. Ford Motor Co.*, 386 F.3d 716, 724 (6th Cir. 2004).  Here, Plaintiffs' claim --

that Defendant improperly coordinated their workers' compensation benefits -- is

preempted because the right against benefit coordination claimed is created, if at all, by

the CBA, not by state law.  Therefore, Plaintiffs' § 418.354(14) claim fails the second

prong of the test, and preemption is warranted.  *Alongi*, 386 F.3d at 724.[6]

　　　2.　　Summary judgment is appropriate on Plaintiffs' § 418.354(11) claim.

Plaintiffs' second state law claim alleges that the 2009 letter violates

§ 418.354(11).  That provision allows employers to "consider" a retiree's social security

disability benefits "as old-age benefit payments under the social security act are

considered" in § 418.354, but only if the Social Security Act has been amended in a

particular way.[7]  Mich. Comp. Laws § 418.354(11).  The parties concede that the Social

---

[6] In the alternative, it appears no violation of § 418.354(14) occurred because Defendant acted in precise accord with the statute's terms.  Section 418.354(1) states that "[e]xcept as otherwise provided in this section, the employer's obligation to pay or cause to be paid weekly benefits . . . <u>shall</u> be reduced by" certain enumerated amounts.  Mich. Comp. Laws § 418.354 (1) (emphasis added).  Subsection 14, the section relied upon by Plaintiffs, provides that "[a]ny disability pension plan entered into or renewed after March 31, 1982 <u>may</u> provide that the payments under that disability pension plan provided by the employer shall not be coordinated pursuant to this section."  Mich. Comp. Laws § 418.354(14) (emphasis added).  The right created § 418.354(14) is the employer's right to elect <u>against</u> coordinated benefits.  Section 418.354(14) is essentially an opt-out provision.  Plaintiff's position is premised on Defendant electing in favor of coordinated benefits, which § 418.354(1) expressly allows.  Therefore, Plaintiff's claim lacks merit.

[7] Section 418.354(11) provides in full: "Disability insurance benefit payments under the social security act shall be considered to be payments from funds provided by the

Security Act has not been so amended.  Consequently, the statute effectively forbids

Defendant from coordinating social security disability payments as old-age social

security benefits are coordinated under § 418.354(1)(a).  Plaintiffs allege that the 2009

letter violates § 418.354(11) because it "provides that workers compensation benefits

shall be reduced by coordination with initial Social Security Disability Insurance

Benefits."  (Compl. ¶ 29.)

The pertinent language from the 2009 letter provides that:

> workers compensation payments for [all] employees shall be
> reduced by disability retirement benefits payable under the
> Hourly-Rate Employees Pension Plan to the extent that the
> combined workers compensation payments, initial Social
> Security Disability Insurance Benefit amount, and the initial
> disability retirement benefit (per week) exceed the
> employee's gross Average Weekly Wage at the time of
> injury.  In no event shall such reduction be greater than the
> disability retirement benefit payable.

Plaintiffs seize on the word "consider" in § 418.354(11) and claim that the 2009 letter

violates the statute because it permits "consideration" of social security disability benefits

when calculating a retiree's benefits.

As amended by the 2009 letter, Defendant seeks to reduce workers' compensation

payments in light of other benefits received, particularly disability retirement and social

---

employer and to be primary payments on the employer's obligation under section 301(7)
or (8), 351, or 835 as old-age benefit payments under the social security act are
considered pursuant to this section. The coordination of social security disability benefits
shall commence on the date of the award certificate of the social security disability
benefits. Any accrued social security disability benefits shall not be coordinated.
However, social security disability insurance benefits shall only be so considered if
section 224 of the social security act, 42 U.S.C. § 424a, is revised so that a reduction of
social security disability insurance benefits is not made because of the receipt of worker's
compensation benefits by the employee."

security disability benefits.  The letter itself states that workers' compensation will be reduced so that the total benefits received -- *i.e.*, the sum of a retiree's workers' compensation, disability retirement, and social security disability benefits -- do not exceed the retirees' average weekly wage at the time of injury.  This amount is achieved by reducing workers' compensation benefits accordingly.  However, the letter also provides that workers' compensation cannot be reduced by more than the disability retirement benefit available.

Section 418.354(1), the provision generally establishing benefit coordination, lists the various benefits to which the coordination policy applies.  That list includes old-age social security benefits.  *See* Mich. Comp. Laws § 418.354(1).  Specifically, if an individual is receiving old-age social security benefits in addition to other payments, an employer may reduce its obligation to pay by fifty percent of the employee's old-age social security benefits.  Mich. Comp. Laws § 418.354(1)(a).  An employer thus "considers" social security benefits under § 418.354 when it reduces benefits by half of the old-age social security benefits available.

The statute relied upon by Plaintiffs, § 418.354(11), states that social security disability benefits "shall be considered to be payments from funds provided by the employer . . . as old-age benefit payments under the social security act are considered pursuant to this section," but only under circumstances which concededly have not occurred.  Mich. Comp. Laws § 418.354(11).  Accordingly, since § 418.354(11) ties the consideration of social security disability benefits to the consideration of social security old-age benefits in § 418.351(1), Defendant has violated § 418.354(11) if workers'

21

compensation payments are reduced by fifty percent of a retiree's social security disability payments. *See* Mich. Comp. Laws § 418.354(1)(a).

As the language of the 2009 letter makes clear, no such coordination has occurred. Defendant is not "considering" Plaintiffs' social security disability insurance within the meaning of § 418.354 because Defendant is not reducing benefits by half of retirees' social security disability payments. While retirees' social security disability benefits impact the overall amount by which benefits can be reduced under the 2009 letter, Defendant is not reducing payments by fifty percent of social security disability benefits. As such, social security disability benefits are not being "considered . . . as old-age benefit payments under the social security act are considered" elsewhere in the statute. Mich. Comp. Laws § 418.354(11). While retirees' social security disability benefits play a role in the overall calculation, it cannot be said that these benefits are being "considered" as that term is used in § 418.354, which is the standard used in § 418.354(11). Consequently, Defendant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## IV. CONCLUSION

For the reasons set forth in this opinion, the Court holds that no dispute of material fact exists and Defendant is entitled to judgment as a matter of law on Plaintiffs' entire complaint. Therefore,

IT IS HEREBY ORDERED that Plaintiffs' motion for summary judgment [Dkt. #20] is DENIED.

22

IT IS FURTHER ORDERED that Defendant's motion for summary judgment

[Dkt. #19] is GRANTED.


                                        s/Gerald E. Rosen
                                        Chief Judge, United States District Court
Dated: March 30, 2012


I hereby certify that a copy of the foregoing document was served upon counsel of record on
March 30, 2012, by electronic and/or ordinary mail.

                                        s/Ruth A.Gunther
                                        Case Manager
                                        (313) 234-5137